IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN D. PROWEL, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2:06-CV-00259 |
| | ) | |
| v. | ) | |
| | ) | Judge McVerry |
| WISE BUSINESS FORMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.      Statement of Facts.

Plaintiff, Brian D. Prowel, is a 37-year-old white male who worked as a machine operator at the Butler, Pennsylvania facility of Defendant, Wise Business Forms, Inc. ("Wise" or "the Company"), from July 1991 until December 2004. (Defendant's Statement of Material Facts Not in Dispute, hereinafter "SMF," ¶¶ 13-15). Plaintiff is a homosexual, and contends that he was "outed" at the Company prior to November 1997. (SMF, ¶¶ 33, 36, 40). He further contends that after he was "outed," his co-workers subjected him to harassment, including references to him as "Rosebud," "fag," "faggot," and "princess," placement of a tiara and container of lubricant jelly on his machine; graffiti in the men's room stating that he had AIDS and was having a relationship with male employees in the plant; statements that he was a sinner for the way he was living his life and that he would burn in hell; and placement of prayer notes on his machine. (SMF, ¶¶ 37-56, 63-82). Plaintiff contends that he complained to his supervisors about the harassment, and spoke with several employees concerning whether they would testify on his behalf in a lawsuit against the Company. (SMF, ¶¶ 43, 46, 49, 52, 56, 77, 81-82, 102-105).

Plaintiff's final months of employment with Wise were characterized by a uncooperative and insubordinate attitude and behavior. In April 2004, he refused to perform a task assigned to him by a supervisor, and ultimately agreed to perform that task only after two supervisors spoke with him at length in an effort to persuade him to perform the task. (SMF, ¶¶ 83-101). He wrote, on production reports, comments to the effect that he should not have to perform jobs other than the nale encoder job to which he was assigned, and that he was not being paid enough to perform other jobs. (SMF, ¶¶ 129-137). He was reluctant to move to other machines, constantly asking his supervisor why he had to move, and complaining that he was not being paid enough. (SMF, ¶¶ 138-139). When he did work on other machines, he often worked more slowly than he should have. (SMF, ¶ 140).

The Company laid Plaintiff off, due to lack of work, on December 13, 2004. (SMF, ¶¶ 142, 150, 155-156). Plaintiff was one of three nale encoder operators at the time, and there was an insufficient amount of work to keep those three operators busy. (SMF, ¶ 143). Jeff Straub, the General Manager of the Butler facility, made the decision to select Plaintiff for layoff, and based his decision on the relative degree of cooperation, willingness to perform other tasks, interest in future advancement opportunities, productivity, and cost of the three operators. (SMF, ¶¶ 145-152). Plaintiff was one of approximately 44 employees whom the Company laid off between 2001 and 2006, and the Company's workforce has dwindled in size from 212 to 145 over the past eight years. (SMF, ¶¶ 4, 160).

Plaintiff filed a charge of sex discrimination, religious discrimination, and retaliation with the Equal Employment Opportunity Commission on September 18, 2005, approximately 279 days after his layoff from Wise. (SMF, ¶ 161).

Plaintiff filed the present lawsuit on February 23, 2006. (SMF, ¶ 163). Plaintiff's Complaint consists of counts containing claims for alleged sexual harassment, sex

discrimination, religious harassment, religious discrimination, and retaliation, in alleged

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"),

and the Pennsylvania Human Relations Act, 43 P.S. § 950.1 et seq. ("PHRA").

II.     Argument.

    A.     Title VII Claims (Count I).

        1.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS WITH REGARD
           TO PLAINTIFF'S CLAIM UNDER TITLE VII THAT WISE
           HARASSED PLAINTIFF BECAUSE OF HIS GENDER.

Count I of Plaintiff's Complaint includes a claim for sexual harassment.  According to

Plaintiff, the alleged sexual harassment consisted of the following: (1) placement of a "man-

seeking-man" newspaper advertisement on his machine, along with a note reading, "why don't

you give him a call, big boy;" (2) certain employees' use of the nickname "Rosebud" to refer to

Plaintiff shortly after he was "outed;" (3) an hourly, female employee's calling him a "fag;" (4)

an hourly, female employee's calling him "Princess;" (5) placement of a pink tiara and a package

of lubricant jelly on his machine; (6) an hourly employee's saying, "I hate him.  They should

shoot all the fags;" (7) graffiti stating that Plaintiff has AIDS and was having relationships with

male employees in the plant; and (8) statements to the effect that Plaintiff was a sinner and

would burn in hell because of the way he was living his life.  (SMF, ¶¶ 37, 39, 42, 44, 47, 51, 53,

71).

To the extent that any of this alleged harassment may have occurred, the harassment

obviously was based on Plaintiff's sexual orientation and not on Plaintiff's gender.  The "man-

seeking-man" newspaper advertisement, use of the term "fag" and "Princess;" placement of a

tiara and lubricant jelly, graffiti concerning AIDS and male relationships, and criticisms of the

way Plaintiff was living his life clearly all relate directly to Plaintiff's sexual orientation.

Plaintiff's testimony that certain employees began referring to him by the nickname "Rosebud"

after he was "outed" reflects that the nickname was based on his sexual orientation, and not on his gender. (SMF, ¶¶ 38-40).

Plaintiff's claim for sexual harassment thus amounts to nothing more than a claim for harassment based on his sexual orientation. Title VII, however, does not cover harassment or discrimination based on homosexuality or sexual orientation. Kay v. Independence Blue Cross, 142 Fed. Appx. 48, 49 (3d Cir. 2005); Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001). Moreover, Congress has repeatedly rejected attempts to amend Title VII to include sexual orientation as a protected class. Bibby, 260 F.3d at 261; Kay, 142 Fed. Appx. at 51 n. 4.

Cognizant that Title VII does not prohibit harassment or discrimination based on homosexuality, Plaintiff fashions his sexual harassment claim as a claim of harassment based on his alleged failure to conform to sexual stereotypes. Relying on the sexual stereotyping theory recognized in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), Plaintiff states that he is a homosexual and that, as a homosexual, he acts in an effeminate way. (Complaint, ¶¶ 7, 8). He further contends that, in acting effeminately, he did not conform to stereotypical behavior for men, that the alleged harassment was based on his failure to conform to that sexual stereotype, and that the harassment therefore is covered by Title VII. Thus, according to Plaintiff's theory, although Congress did not intend to prohibit harassment or discrimination against homosexuals when it enacted Title VII, Congress did intend to prohibit harassment and discrimination against homosexuals if they exhibit cross-gender behaviors typically associated with homosexuals. According to Plaintiff's theory, Congress did not intend to protect homosexual men who act like men, but did intend to protect homosexual men who act like women.

Plaintiff, however, cannot successfully contort the sexual stereotyping theory to apply to his harassment claim against Wise. To establish a claim of sexual harassment based on a sexual

- 4 -

stereotyping theory, the plaintiff must prove "that the harasser's conduct was motivated by a belief that the victim did not conform to gender stereotypes." <u>Kay</u>, 142 Fed. Appx. at 49. <u>See also</u> <u>Bibby</u>, 260 F.3d at 262-63. Here, the evidence unmistakably reflects that any harassment that Plaintiff may have experienced was motivated by his sexual orientation, and not by any alleged failure to conform to gender stereotypes.

Two decisions of the United States Court of Appeals for the Third Circuit establish that the entry of summary judgment in Wise's favor is appropriate under the facts of this case. In <u>Kay v. Independence Blue Cross</u>, 142 Fed. Appx. 48 (3d Cir. 2005), the plaintiff asserted a sexual harassment claim, based on a gender stereotyping theory. As in the present case, the plaintiff's evidence consisted of conduct and comments relating to the plaintiff's sexual orientation. Specifically, the plaintiff in <u>Kay</u> overheard a co-worker state, "Did you see the fag that moved up on the floor yesterday?" A co-worker said to the plaintiff, "You are so gay," and said that he was glad that there were "real men" on the floor. Co-workers circulated a petition stating, "If you want this queer off the floor, sign here." The plaintiff observed a note stating, "Stop staring at me, you faggot," and a flyer for a gay sex phone line. That flyer contained a line that read, "A real man in the corporate world would not come to work with an earring in his ear. But I guess you will never be a real man." The plaintiff received voice mail messages which included the terms, "faggot" and "fem." A co-worker commented, in reference to another male employee and in the plaintiff's presence, "I'm glad that there's a real man on the floor." 142 Fed. Appx. at 50-51.

Affirming a district court decision granting summary judgment in favor of the defendant-employer, the United States Court of Appeals for the Third Circuit stated, "[W]e think it clear that [the plaintiff's] claim is based upon discrimination that is motivated by perceived sexual orientation." <u>Id</u>. at 51. The court further reasoned that, to the extent that any of the alleged

harassment could be interpreted as gender stereotyping, that alleged harassment "would then only constitute the sporadic use of abusive language, gender-related jokes that fall short of the threshold needed for gender-stereotyping liability under Title VII." Id.

In Bibby v. Philadelphia Coca-Cola Bottling Co., 260 F.3d 527 (3d Cir. 2001), the plaintiff was a homosexual who allegedly experienced sexual harassment while employed by the defendant-employer. The plaintiff got into an altercation with a co-worker, who yelled that "everybody knows that you're as gay as a three dollar bill," "everybody knows that you're a faggot," and "everybody knows" that plaintiff engaged in a particular sexual act. The co-worker subsequently called the plaintiff a "sissy." Sexually-oriented graffiti about the plaintiff was written in the restrooms and was allowed to remain for longer than other graffiti. The plaintiff allegedly was subjected to other harassment of a non-sexual nature. 260 F.3d at 259-60.

The United States Court of Appeals for the Third Circuit affirmed a district court decision granting summary judgment in favor of the defendant-employer. In reaching this result, the court noted that the plaintiff had not asserted a claim that he was harassed based on his failure to conform to societal stereotypes. Id. at 264. The court further noted, however, that the evidence that the plaintiff presented "indicated only that he was being harassed on the basis of his sexual orientation, rather than because of his sex, [and that] the District Court properly determined that there was no cause of action under Title VII." Id. at 265. See also Webb v. Int'l Bhd. of Elec. Workers, Local Union No. 654, No. 04-3613, 2005 U.S. Dist. LEXIS 21381, at *29-30 (E.D. Pa. 2005) (holding that harassment was based on sexual orientation because it focused on references to plaintiff's supposed homosexuality or engagement in homosexual acts, and that ridicule of plaintiff's lips and pierced ears, in context, was due to association of those attributes with homosexuality).

Because Plaintiff's sexual harassment claim is one for harassment based on sexual orientation, and because Title VII does not cover harassment or discrimination based on sexual orientation, summary judgment should be entered in favor of Wise and against Plaintiff with regard to his Title VII claim for sexual harassment.

>       2.      NO GENUINE ISSUE OF MATERIAL FACT EXISTS WITH REGARD TO PLAINTIFF'S CLAIM UNDER TITLE VII THAT WISE DISCRIMINATED AGAINST HIM, BASED ON HIS GENDER, BY TERMINATING HIS EMPLOYMENT.

Count I of Plaintiff's Complaint includes a claim that Wise discriminated against him, based on his sex, by terminating his employment. (Complaint, ¶ 13).

As with his claim of sexual harassment, Plaintiff's claim that Wise discriminated against him on the basis of his sex by terminating his employment amounts to nothing more than a claim for sexual orientation discrimination. As noted in Section II(A)(1) of this Brief, Title VII does not cover sexual orientation discrimination. Because Title VII does not cover sexual orientation discrimination, summary judgment should be entered in favor of Wise and against Plaintiff with regard to his sex discrimination claim.

Moreover, even if Plaintiff could establish a prima facie case of a type of discrimination that Title VII prohibits, there is no genuine issue of material fact concerning the Company's articulated reason for laying Plaintiff off. If a plaintiff establishes a prima facie case of unlawful discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory business reason for the employment action that it has taken. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The employer's burden is a burden of production, and not a burden of persuasion. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the employer is able to articulate a legitimate, non-discriminatory business reason for the employment action that it has taken, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the employer's articulated reason is a pretext for unlawful discrimination. Id.

- 7 -

It is undisputed in this case that Jeffrey Straub, the General Manager of Wise's Butler, Pennsylvania facility, made the decision to lay Plaintiff off. Straub testified that in December 2004, he made the decision to eliminate one of the three nale encoder operator positions, due to lack of work on the nale encoder machines. (SMF, ¶ 142). Straub testified that the lack of work related to a decline in the demand and market for business form documents. (SMF, ¶ 144). Wise's second-shift supervisor, Henry Nolan, confirmed that there was little work available on the nale encoder machine. (SMF, ¶ 143). Plaintiff has no evidence to refute Straub's testimony that there was a decline in the demand and market for business forms, or that there was a lack of work on the nale encoder machine.

Straub testified that, in deciding which of the three nale encoder operators to select for layoff, he considered the nale encoder operators' degree of cooperation, willingness to perform other tasks, interest in future advancement, productivity, and cost. (SMF, ¶ 146). Straub testified that, unlike the nale encoder operators on the daylight and weekend shifts, Plaintiff had demonstrated a lack of cooperation and a lack of willingness to perform tasks other than those to which he was regularly assigned. (SMF, ¶ 147). The testimony and documents in this case clearly bear out Straub's observation. In April 2004, Plaintiff defied his supervisor's instruction to insert chipboard into a job, and inserted that chipboard only after two supervisors spent a considerable amount of time persuading him to do so. (SMF, ¶¶ 83-101). According to Plaintiff's handwritten version of the incident, he told his supervisor that he "was not going to continue to run to short-run collators, because it's not [his] title or [his] job." (SMF, ¶ 90). Plaintiff's handwritten version reflects that he told his supervisor that it was the collator operators' job, "not [his], besides they are making significantly more money than [him]." (SMF, ¶ 92). In September 2004, he wrote on a Daily Production Report, "Forced to run short-run collator, which is not my job and I'm not being paid the salary to do it." (SMF, ¶ 133). In

00793596.DOC

October 2004, after committing an operating error that required Wise to rerun a job, he wrote, "Office should have all the information where it is needed to run job, I should not have to check the work, I'm not being paid to do both our jobs!" (SMF, ¶¶ 134-137). Nolan testified that, during 2004, Plaintiff was reluctant to move to other machines, constantly questioning why he had to do so, and did not work up to his capabilities when working on those other machines. (SMF, ¶¶ 138-140). Nolan reported these observations to the decision maker, Straub, prior to the decision to lay Plaintiff off. (SMF, ¶ 141).

With regard to the factor of interest in advancing to other positions, Straub testified that Plaintiff had not signed up for any job postings at the Company in the last several years of his employment. (SMF, ¶ 152). The two other nale encoder operators had indicated their interest in advancement. (SMF, ¶ 152). Plaintiff has no evidence to refute these facts.

Straub testified that the productivity of the three nale encoder operators was relatively equal, and that Plaintiff had the highest hourly wage rate of the three operators. (SMF, ¶ 152). Again, there is no evidence to rebut Straub's testimony. Based on the undisputed evidence, there is no genuine issue of material fact concerning the non-pretextuality of the Company's articulated reason for terminating Plaintiff's employment.

Finally, even if Plaintiff could create a genuine issue of fact concerning whether Wise's articulated reason for terminating his employment is pretextual, there is no evidence in this case that Wise's articulated reason is a pretext for discrimination for failure to conform to sexual stereotypes. Straub testified that, when making the decision to select Plaintiff for layoff, Straub was not aware of and did not consider Plaintiff's sexual orientation or whether Plaintiff did or did not conform to alleged sexual stereotypes. (SMF, ¶ 153). Plaintiff has no evidence to rebut Straub's testimony. See Maurizio v. Fox Chapel Foods, Inc., No. 02:04cv1168, 2006 U.S. Dist. LEXIS 62926, at *15 (W.D. Pa. Sept. 5, 2006). Plaintiff, in fact, admitted that he has no

evidence that Straub is biased against homosexuals or against persons who fail to conform to sexual stereotypes.  (SMF, ¶ 154).

For these reasons, summary judgment should be entered in favor of Wise and against Plaintiff with regard to Plaintiff's claim that Wise discriminated against him based on his sex by laying him off.

3.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS WITH REGARD TO PLAINTIFF'S CLAIM UNDER TITLE VII THAT WISE HARASSED HIM BASED ON RELIGION.

In Count I of his Complaint, Plaintiff contends that Wise harassed him based on his failure to conform to alleged religious beliefs.  (Complaint, ¶ 16).

To establish a prima facie case of religious harassment, a plaintiff must demonstrate the following five elements: (1) the plaintiff suffered intentional discrimination because of religion; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same religion in that position; and (5) the existence of respondent superior liability.  Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1991); Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276-77 (3d Cir. 2001).

In the present case, Plaintiff is unable to establish several of the elements of a claim for religious harassment.  First, he cannot establish that the harassment that he allegedly experienced was "because of religion."  To constitute harassment based on religion, the actions of the employer must either require the plaintiff to practice or believe in a particular faith, or inhibit the plaintiff's practice of or belief in a particular faith.  See Pedreira v. Ky. Baptist Homes for Children, Inc., 186 F. Supp. 2d 757, 761 (W.D. Ky. 2001) ("There is no religious discrimination in an employment policy which does not require and does not inhibit the practice of or belief in any faith").  Discrimination based on a moral or lifestyle choice, such as homosexuality or

- 10 -

marital infidelity, does not require the practice of or belief in any particular faith, nor does it inhibit the practice of or belief in any religion. Accordingly, harassment or discrimination based on sexual orientation does not constitute religious discrimination under Title VII.

Two district court cases illustrate the application of these principles. In Pedreira v. Ky. Baptist Homes for Children, Inc., 186 F. Supp. 2d 757 (W.D. Ky. 2001), the defendant-employer terminated the plaintiff's employment after learning that she was a lesbian. After terminating the plaintiff's employment, the employer issued a public statement stating that it was important for the employer to stay true to its Christian values, and that homosexuality was a lifestyle that would prohibit employment with the employer. The plaintiff sued under Title VII, contending that she was fired for failing to adhere to the employer's religious beliefs concerning homosexuality. Id. at 761.

In granting summary judgment in favor of the employer, the court noted that Title VII prohibits employers from utilizing an employee's religion as a criterion for discharge, and from discharging an employee for refusing to embrace the employer's faith. 186 F. Supp. 2d at 760. Holding that the employer was not requiring the plaintiff to practice any particular religion and was not inhibiting the plaintiff's practice of any particular religion, the court reasoned:

> The religious foundation for [the employer's] policies [against employing homosexuals] is not relevant to the analysis however because [the employer] does not condition employment on the acceptance or practice of its religious beliefs. Employees need not embrace the religion-based moral code which [the employer] espouses in order to comply with the conduct requirement. The code of conduct, although requiring behavior which is consistent with [the employer's] values, leaves the religious freedoms of employees and potential employees unfettered. The civil rights statutes protect religious freedoms, not personal lifestyle choices. There is no religious discrimination in an employment policy which does not require and does not inhibit the practice of or belief in any faith.

186 F. Supp. 2d at 761.

In <u>McCrory v. Rapides Reg'l Med. Ctr.</u>, 635 F. Supp. 975 (W.D. La.), <u>aff'd</u>, 801 F. 2d 396 (5th Cir. 1986), the defendant-employer discharged the plaintiffs for having extra-marital relationships.  The plaintiffs filed suit under Title VII, contending that they were discharged because they had failed to conform to their employer's religious beliefs against extra-marital affairs.  <u>Id.</u> at 979.  Granting the employer's motion for summary judgment, the court held that the plaintiffs' allegation "misses the point of Title VII."  The court noted that Title VII is implicated only when an employer imposes on an individual's religious beliefs.  The court concluded that the plaintiffs had no viable claim for religious discrimination because the plaintiffs' right to commit adultery was not a "religious belief" subject to protection.  <u>Id.</u>

In the present case, Plaintiff testified that he is a Christian and that the Wise employees who allegedly harassed him are Christians.  (SMF, ¶¶ 57-69).  He admits that he is not contending that Wise harassed him based on his religious beliefs.  (SMF, ¶ 60).  He instead is contending that Wise harassed him because he failed to conform to Wise's alleged religious beliefs.  (SMF, ¶ 61).  When asked, during his deposition, to identify all of the religious beliefs to which he allegedly did not conform, he identified only an alleged religious belief that "a man should not lay with another man."  (SMF, ¶ 63).  Thus, according to Plaintiff, the religious harassment was based on an alleged Christian religious belief opposing homosexuality.

As in <u>Pedreira</u> and <u>McCrory</u>, any alleged harassment or discrimination that Plaintiff experienced due to his homosexuality was not "because of religion."  Wise did not require him to practice any particular religion, and did not inhibit his practice of any particular religion.  Even if there was a religious motivation to any harassment that Plaintiff may have experienced, that religious motivation did not transform harassment based on a non-religious lifestyle choice into religious harassment.  <u>See</u> <u>Pedreira</u>, 186 F. Supp. at 761.

A second element of a religious harassment claim that Plaintiff cannot establish is the element that the harassment be severe or pervasive.  To constitute severe or pervasive harassment, the plaintiff must prove that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris, 510 U.S. at 21; Abramson, 260 F.3d at 278-79.  Here, the alleged harassment consisted of a note stating that "Rosebud will burn in hell;" notes that were left on "a couple of occasions" stating that Plaintiff was a sinner for the way that he was living his life; prayer notes that were left on Plaintiff's machine, and religious pamphlets that were left in the men's room.  (SMF, ¶¶ 7-82).  The evidence of alleged religious harassment that Plaintiff cites falls short of the standard of a workplace "permeated with discriminatory, intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris, 510 U.S. at 21.

Plaintiff also cannot establish that the alleged harassment would detrimentally affect a reasonable person of the same religion.  Plaintiff testified that he is a Christian.  (SMF, ¶ 57).  The materials about which Plaintiff complains allegedly were Christian-oriented materials that were left by Christians.  (SMF, ¶¶ 70-80).  Christian-oriented materials would not reasonably have a detrimental effect on a Christian.

For these reasons, no genuine issue of material fact exists with respect to Plaintiff's Title VII claim for religious harassment.

> 4.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS WITH REGARD TO PLAINTIFF'S CLAIM UNDER TITLE VII THAT WISE TERMINATED PLAINTIFF'S EMPLOYMENT BASED ON RELIGION.

Plaintiff appears to contend, in Count I of his Complaint, that Wise terminated his employment because of his failure to conform to Wise's alleged religious beliefs.

- 13 -

As noted in the preceding subsection of this Brief, Plaintiff's claim for religious discrimination is a claim that Wise discriminated against him because of his sexual orientation, which is not a claim recognized under Title VII.  Moreover, as noted in Section II(A)(2) of this Brief, no genuine issue of material fact exists with regard to any alleged pretextuality of Wise's articulated reason for terminating Plaintiff's employment.  Finally, even if Plaintiff could raise a genuine issue of material fact with regard to pretext, there would be no genuine issue concerning the fact that Wise's articulated reason for terminating Plaintiff's employment was not a pretext for religious discrimination.  It is undisputed in this case that Straub was the decision-maker. (SMF, ¶ 142).  He testified that he is not aware of Plaintiff's religious denomination or religious beliefs, and that Plaintiff's religious denomination or religious beliefs were not a consideration in his decision to lay Plaintiff off.  (SMF, ¶ 153).  Straub further testified that he did not know Plaintiff's sexual orientation, and that the conformity or lack of conformity of Plaintiff's sexual orientation to any alleged religious belief did not enter into his decision to lay Plaintiff off. (SMF, ¶ 153).  Plaintiff has no evidence to dispute Straub's testimony.

For these reasons, summary judgment should be entered in favor of Wise and against Plaintiff with regard to Plaintiff's claim that Wise discriminated against him based on religion by laying him off.

5.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS WITH REGARD TO PLAINTIFF'S CLAIM UNDER TITLE VII THAT WISE TERMINATED HIS EMPLOYMENT IN RETALIATION FOR PLAINTIFF'S ALLEGED OPPOSITION TO UNLAWFUL EMPLOYMENT PRACTICES.

Plaintiff's Title VII count includes a claim that Wise terminated his employment in retaliation for his alleged opposition to unlawful employment practices.

Title VII prohibits employers from discriminating against an individual because he has opposed any practice made an unlawful employment practice under Title VII, or because he has

made a charge, testified, assisted, or participated in any manner in a proceeding under Title VII. 42 U.S.C. § 2000e-3(a). The anti-retaliation provision of Title VII thus contains an "opposition clause," prohibiting discrimination for opposing practices made unlawful under Title VII, and a "participation clause," barring discrimination for participating in a proceeding under Title VII. Slagle v. County of Clarion, 435 F.2d 262, 266 (3d Cir., 2006). The distinction between the two clauses is significant, because the levels of statutory protection associated with those clauses differ. Id. The participation clause offers much broader protection to employees than does the opposition clause. Id.

To establish a claim for retaliation under Title VII, a plaintiff must show (1) that he engaged in activity protected by Title VII; (2) that the employer took an adverse employment action against him; and (3) that there was a causal connection between his participation in the protected activity and the adverse employment action. Fleeger v. Principi, No. 05-5250, 2007 U.S. App. LEXIS 5477, at *8 (3d Cir. 2007); Sarullo v. USPS, 352 F.3d 789, 800 (3d Cir. 2003).

No genuine issue of material fact exists with regard to the first and third elements of Plaintiff's retaliation claim. Plaintiff cannot establish the first element, because he did not engage in activity protected by Title VII. Plaintiff contends that his protected activity consisted of opposition to unlawful employment practices. Plaintiff does not allege that he suffered an adverse employment action because of any participation in a proceeding under Title VII, so the claim that he asserts therefore is one under the opposition clause of Title VII.

Plaintiff's opposition consisted of his complaining to supervisors about the placement of a "man-seeking-man" advertisement on his machine; about certain employees' referring to him as "Rosebud" after he was "outed;" about an hourly employee's calling him a "fag;" about an employee's calling him "Princess;" about an employee's placement of a tiara and a container of lubricant jelly on his machine; about an employee's saying "I hate fags. They should shoot all

the fags;" about graffiti on the restroom walls; about an employee's saying that Plaintiff was a sinner because of the way he was living his life; and about two employees' bringing in religious materials that were critical of his homosexual lifestyle. (SMF, ¶¶ 43, 46, 49, 52, 56, 77, 81). Plaintiff also told three hourly employees that he was tired of the way things were going, and asked them if they would testify if he were to file a lawsuit against Wise. (SMF, ¶¶ 103-105).

As noted, the harassment that Plaintiff allegedly experienced was harassment based on sexual orientation. His opposition to that alleged harassment therefore was opposition to sexual orientation harassment. Title VII does not prohibit harassment based on sexual orientation. Accordingly, Plaintiff's opposition to that alleged harassment was not activity protected by Title VII.

A relevant case is the 2006 decision of the Third Circuit in Slagle. In Slagle, the plaintiff was a correctional officer whom the Clarion County Jail had suspended for alleged inappropriate conduct. The officer filed a charge with the Equal Employment Opportunity Commission, alleging discrimination because of whistleblowing, in violation of his civil rights, and invasion of privacy. Approximately four months after the officer filed his EEOC charge, the jail discharged him. The officer subsequently filed a lawsuit against the county, alleging that the jail had violated Title VII by discharging him in retaliation for his having filed an EEOC charge. The trial court granted summary judgment to the county, on the basis that the officer had failed to establish that he had engaged in protected activity.

The Third Circuit affirmed the trial court's decision. The court reasoned that, in order for an individual to invoke the anti-retaliation protection of Title VII, the charge that the individual files must be "under this subchapter," and that a charge that does not allege discrimination on a basis prohibited by Title VII is not "under this subchapter." Id. at 266-67. The court thus held that a plaintiff is protected under Title VII if he files a formal complaint that alleges one or more

prohibited grounds, but that the plaintiff must allege some prohibited ground in his complaint. Id. at 267. Because the plaintiff had not alleged, in his EEOC charge, discrimination based on race, color, religion, sex, or national origin, the court determined that the trial court had properly entered summary judgment in the county's favor on the officer's retaliation claim.

The only material difference between the Slagle case and the present case is that the plaintiff in Slagle had actually filed a discrimination charge which did not allege a type of discrimination prohibited by Title VII. In the present case, Plaintiff merely complained about conduct which was not a type of discrimination prohibited by Title VII. If the plaintiff in Slagle had no cause of action for retaliation under the broad participation clause of Title VII, then the present Plaintiff has no cause of action for retaliation under the narrower opposition clause of Title VII.

A case that is on point with the facts of the present case is Hammer v. St. Vincent Hosp. and Health Care Ctr., Inc., 224 F.3d 701 (7th Cir. 2000). The plaintiff in Hammer was a male homosexual who worked as a nurse at the defendant-hospital. A unit medical director at the hospital allegedly harassed plaintiff, by lisping at the plaintiff, flipping his wrists, and making jokes about homosexuals. The plaintiff filed an internal written grievance, complaining about the harassment, and was fired one month later for alleged falsification of a patient record. The plaintiff filed a Title VII claim alleging, inter alia, that the hospital had discharged him in retaliation for his grievance about the harassment that he allegedly had experienced. The trial court granted judgment as a matter of law in favor of the hospital, and the United States Court of Appeals for the Seventh Circuit affirmed. The Court of Appeals reasoned that, in order to form the basis for a retaliation claim, a complaint must involve discrimination that Title VII prohibits. 224 F.3d at 707. The court stated that the plaintiff must have a subjective belief that he opposed an unlawful practice, and that the plaintiff's belief must be objectively reasonable. Id. The court

observed that, if a plaintiff opposes conduct that is not proscribed by Title VII, no matter how frequent or severe, than his sincere belief that he opposed an unlawful practice could not be reasonable.  Id.  The court concluded that because the conduct that the plaintiff opposed was harassment based on sexual orientation and because Title VII does not prohibit such harassment, the trial court properly granted summary judgment to the hospital on the plaintiff's retaliation claim.  See also Hamm v. Weyauwega Milk Prods., Inc., 332 F.3d 1058, 1066 (7th Cir. 2003); Manocchio v. Children's Serv. Ctr. of Wyoming Valley, No. 3:06cv710, 2007 U.S. Dist. LEXIS 14234, at *9 (M.D. Pa. Feb. 28, 2007) (holding that plaintiff did not oppose an unlawful employment practice when he filed a grievance related to sexual orientation).

Even if the present Plaintiff could somehow argue that he was not complaining about sexual orientation harassment when he complained about his co-workers' conduct, his retaliation claim would fail, pursuant to the rationale of the United States Court of Appeals for the Third Circuit in Barber v. CSX Distribution Servs., 68 F.3d 694 (3d Cir. 1995).  In Barber, the plaintiff was a 52-year-old man who was passed over for a promotion to an account executive position, in favor of a younger employee.  After having been denied the promotional opportunity, the plaintiff wrote to the company's human resources department, to state that he had 21 years of relevant experience, and to inquire why the position was awarded to a less qualified individual. Id. at 697.  The plaintiff's supervisor subsequently called the plaintiff into the supervisor's office, to express disappointment over the plaintiff's complaint.  The plaintiff's employment was terminated, in a reduction-in-force, seven months later.  The plaintiff then filed an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), alleging, inter alia, that the company had terminated his employment in retaliation for his complaint to the company's human resources department.  The trial court granted judgment as a matter of law to the company, and the Third Circuit affirmed.  The Third Circuit held that the plaintiff's letter to

the human resources department did not constitute protected conduct, because it did not specifically complain about age discrimination. Id. at 701. In reaching this holding, the court reasoned that "[a] general complaint of unfair treatment does not translate into a charge of illegal age discrimination." Id. at 702.

If the present Plaintiff was not complaining about sexual orientation harassment when he complained about his co-workers' conduct, then his complaints, at best, could be viewed as a general complaint of unfair treatment. Under the rationale of Barber, his complaints were insufficiently specific to form the basis for a viable retaliation claim.

Aside from his inability to establish the first element of a cause of action for retaliation, Plaintiff cannot establish the third prong of the test, causation. "The mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Krouse v. Amer. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If the employer articulates a legitimate, non-retaliatory explanation for its employment decision, the plaintiff must produce sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action in order to survive a motion for summary judgment. Id. As noted in Section II(A)(2) of this Brief, no genuine issue of material fact exists with regard to any alleged pretextuality of Wise's articulated reason for terminating Plaintiff's employment.

For these reasons, summary judgment should be entered in favor of Wise and against Plaintiff with regard to Plaintiff's claim that Wise retaliated against him in violation of Title VII.

B.      PHRA Claims (Count II).

Count II of Plaintiff Complaint is a claim for alleged sexual and religious harassment and discrimination, and for alleged retaliation, under the PHRA.

- 19 -

The filing of a timely PHRC charge is a prerequisite to the maintenance of a court action for violation of the PHRA. Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997); Sharp v. BW/IP Int'l, Inc., 991 F. Supp. 451 (E.D. Pa. 1998). The PHRA contains a 180-day time limit for the filing of a charge. 43 P.S. § 959(h). In the present case, Wise terminated Plaintiff's employment on December 13, 2004. Plaintiff filed a charge with the EEOC on September 18, 2005, approximately 279 days later. The EEOC subsequently cross-filed the charge with the PHRC. Because Plaintiff did not file a timely charge with the PHRC, he is barred from maintaining his claim under the PHRA.

Even if Plaintiff's PHRA claim were not time-barred, no genuine issue of material fact would exist on that claim, for the reasons stated in Section II(A) of this Brief. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (holding that courts should interpret the PHRA in accord with Title VII).

III.    CONCLUSION.

For the foregoing reasons, summary judgment should be entered in favor of Defendant, Wise Business Forms, Inc., and against Plaintiff, Brian D. Prowel, as to both counts of Plaintiff's Complaint, and that Complaint should be dismissed, with prejudice.

Respectfully submitted,

s/ Kurt A. Miller
Kurt A. Miller
PA. I.D. No. 37850

Amy L. Berecek
PA I.D. No. 93237

THORP REED & ARMSTRONG, LLP
Firm I.D. No. 282
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
(412) 394-2363

Attorneys for Defendant,
Wise Business Forms, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the forgoing document has been served this 15th day of June, 2007. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties listed below:

Timothy P. O'Brien, Esquire
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219

s/ Kurt A. Miller

00793596.DOC