## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN D. PROWEL,                          )
                                          )
                    Plaintiff,            )      2:06-cv-259
          v.                              )
                                          )
WISE BUSINESS FORMS, INC.,                )
                                          )
                                          )
                    Defendant.            )


### MEMORANDUM ORDER

Pending before the Court for consideration and disposition is DEFENDANT'S MOTION

FOR SUMMARY JUDGMENT (Document No. 24).  The issues have been thoroughly briefed

(Document Nos. 25, 29, 36, 39) and the parties have also exhaustively addressed the Statement of

Material Facts Not in Dispute (Document Nos. 26, 27, 30-34, 37).  The matter is ripe for

resolution.


Factual and Procedural Background

This is an employment discrimination case.  Plaintiff Brian Prowel was employed as a

"nale encoder" at the factory of Defendant Wise Business Forms, Inc.'s ("Wise") in Butler,

Pennsylvania from 1991 until December 2004, when his employment was terminated.

Throughout his employment, Prowel was subjected to numerous incidents by co-workers,

including:  repeated comments mocking his effeminate mannerisms and appearance, such as

"Did you see what Rosebud was wearing", "Did you see Rosebud sitting there with his legs

crossed, filing his nails" and "Look at the way he walks"; placing a photograph of several men

with their pants down, holding their penises, with bags on their heads, on his machine"; calling

him a "fag" and remarking: "Listen, faggot, I don't got to put up with this from you"; stating: "I hate him.  They should shoot all the fags";  leaving items such as a pink feathered tiara and a packet of KY lubricant on his work station; using derogatory nicknames such as "Rosebud" and "Princess"; making offensive phone calls from a Wise number to Prowel's home; placing graffiti in the bathroom about AIDS and Prowel having sexual relations with other males in the plant; and placing a sharpened bolt under the tire of Prowel's car in the parking lot.  Obviously, such conduct is reprehensible.  There was also religiously-based conduct, including leaving religious materials on his work station indicating that Prowel would "burn in hell" and encouraging him to "come clean with his Maker"; leaving prayer notes on his machine; "preaching" to other employees at the vending machines regarding religious issues, including homosexuality; and the Human Resources manager telling other employees that Prowel did not fit in with the good Christian values of the company.[1]

Plaintiff filed a two-count complaint based on Title VII and the Pennsylvania Human Relations Act (PHRA), alleging that he was harassed due to a perception that he is effeminate, does not meet male stereotypes and does not conform to his employer's religious beliefs and that he was wrongfully terminated from his employment in retaliation for his complaints about such harassment.  Plaintiff avers in Complaint ¶ 8 that he "was repeatedly told that his sexual orientation, that is because he was homosexual, meant that he was a 'sinner' and that such

----

[1]Defendant contends that the Court should not consider the affidavit submitted by Prowel, which discusses numerous incidents that Prowel was unable to recall during his deposition.  In *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir. 1991), the Court explained that without a satisfactory explanation, affidavits that contradict earlier deposition testimony may be disregarded.  After review, the Court concludes that the affidavit is not contradictory and, in any event, that it does not change the outcome.  Accordingly, the Court will consider the matters set forth in the affidavit for the purpose of deciding the pending motion.

orientation or sexual preference was inconsistent with the culture in a 'good Christian company' like Wise." Plaintiff is not contending that he was harassed or terminated because of his sexual orientation.

Defendant seeks summary judgment on all claims. Plaintiff does not oppose Defendant's request for summary judgment on the claims of termination due to sex or religion and the PHRA claims. Brief in Opposition to Summary Judgment at 20 n. 4. Accordingly, summary judgment will be granted on those claims. Plaintiff disputes that summary judgment is appropriate as to his claims for sexual harassment, religious harassment, and retaliation.


Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

3

Legal Analysis

The actual text of Title VII, 42 U.S.C. § 2000e-2(a), states:

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

The elements of a hostile work environment claim under Title VII are: (1) the employee suffered intentional discrimination in a work environment because of his or her sex [or religion]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex [or religion] in that position; and (5) the existence of respondeat superior liability. *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir.1997) (*quoting Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990)).  The Court will address Plaintiff's "sex" and "religion" theories seriatim.

1.      Discrimination "Because of Sex"

Title VII does not provide a remedy for discrimination based on sexual orientation.  In recognition of this fact, Plaintiff contends that the alleged discrimination was not because of his homosexuality but due to his failure to conform to sexual stereotypes, in that "his conduct and appearance are in many respects effeminate."  Both parties recognize that the controlling Third Circuit  precedent is *Bibby v. Philadelphia Coca-Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001).

4

Accordingly, the Court will discuss *Bibby* in some detail.

The facts in *Bibby* were similar to those in this case.  Bibby suffered abuse from a co-worker who yelled, among other things "everybody knows you're gay as a three dollar bill," and "everybody knows you're a faggot," and called him a sissy.  There was also graffiti of a sexual nature bearing his name in the bathroom that was not timely removed.  The district court granted the employer's motion for summary judgment, concluding that Bibby was harassed because of his sexual orientation and not because of his gender.  The Court of Appeals affirmed.

Although commenting that harassment on the basis of sexual orientation has no place in our society, the Court of Appeals stated:

> Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., provides that "[i]t shall be an unlawful employment practice ... to discriminate against any individual ... because of ... sex." 42 U.S.C. § 2000e 2(a)(1). It is clear, however, that Title VII does not prohibit discrimination based on sexual orientation. Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation.

*Id.* at 261 (citations omitted).  The Court then reviewed several scenarios in which Title VII may theoretically apply to cases of same-sex discrimination, including, as relevant here, "evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender."  *Id.* at 262-63.  This theory is based on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (woman denied partnership in accounting firm because she was macho, overcompensated for being a woman, needed charm school, was masculine and was a lady using foul language).  As discussed in *Bibby*, a plurality of the Supreme Court agreed that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."  260 F.3d at 263.  The Court further explained that Congress intended to strike at "the entire spectrum of disparate treatment of men and women

resulting from sex stereotypes." *Id. Bibby* noted the result in *Doe v. City of Belleville*, 119 F.3d 563, 580-83 (7th Cir. 1997) ("holding that where co-workers verbally and physically harassed a young man because he wore an earring, repeatedly asked him whether he was a girl or a boy, and threatened to assault him sexually, he had presented sufficient evidence to support a conclusion that the harassment amounted to discrimination because of sex"). *Id.* at 263 n.5.  It is clear that once a plaintiff shows that harassment is motivated by sex, it is no defense that it may also have been motivated by anti-gay animus. *Id.* at 265.

However, the Court of Appeals emphasized: "Whatever the sexual orientation of a plaintiff bringing a same-sex sexual harassment claim, that plaintiff is required to demonstrate that the harassment was directed at him or her because of his or her sex." *Id.*  A plaintiff must prove that the conduct was "not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion] ... because of ... sex.*'" *Id.* (emphasis in original) (citation omitted). The Court held that Bibby had "offered nothing that would support such a conclusion" and that "[n]o reasonable finder of fact could reach the conclusion that he was discriminated against because he was a man." *Id.* at 264.  While Bibby did not explicitly advocate the sexual-stereotype argument being made in this case, the Court of Appeals concluded that "the evidence produced by Bibby" indicated that he was harassed due to his sexual orientation rather than because of his sex, and accordingly, "the District Court properly determined that there was no cause of action under Title VII." *Id.* at 265.[2]

_____

[2]Although the Court did not conduct exhaustive research, at least two other circuits have cited *Bibby* in reaching similar decisions.  *See Vickers v. Fairfield Medical Center*, 453 F.3d 757 (6th Cir. 2006) (finding that sexual stereotyping theory was not broad enough to encompass homosexual behavior that did not conform to traditional masculine role); *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131 (10th Cir. 2005) (granting summary judgment to employer because heterosexual woman did not prove that harassment from her lesbian boss was

*Bibby* is controlling and the same result must be reached as to Prowel's claim of sexual

harassment.  *See also Kay v. Independence Blue Cross*, 142 Fed. Appx. 48 (3d Cir. 2005)

(unpublished) (rejecting district court's recognition of gender stereotyping claim under similar

facts).  In essence, despite the socially controversial subject-matter, this is a statutory

interpretation case.  The Court must construe the meaning of the phrase "discrimination ...

because of ... sex," as used in Title VII.  The role of the Court in interpreting a statute is to give

effect to Congress' intent.  *Reese Bros., Inc. v. United States*, 447 F.3d 229, 235 (3d Cir. 2006).

As the Court of Appeals instructed in *Bibby*, Congress clearly did not intend to provide a remedy

for discrimination based on sexual orientation in Title VII.  Permitting a plaintiff to simply

relabel a sexual orientation claim as one for failure to conform to gender stereotypes would evade

the statutory intent of Congress.  *See Simonton v. Runyon*, 232 F.3d 33, 37 (2d Cir. 2000)

(granting motion to dismiss sexual orientation claim but deferring ruling on sexual stereotyping

claim) ("We decline to adopt a reading of Title VII that would also "achieve by judicial

'construction' what Congress did not do and has consistently refused to do on many occasions").

The same reasoning was applied to sexual stereotyping claims in *Dawson v. Bumble & Bumble*,

398 F.3d 211, 218 (2d Cir. 2005):

> When utilized by an avowedly homosexual plaintiff, however, gender stereotyping
> claims can easily present problems for an adjudicator. This is for the simple
> reason that "[s]tereotypical notions about how men and women should behave
> will often necessarily blur into ideas about heterosexuality and homosexuality."
> *Howell v. North Cent. Coll.*, 320 F.Supp.2d 717, 723 (N. D. Ill. 2004). Like other
> courts, we have therefore recognized that a gender stereotyping claim should not
> be used to "bootstrap protection for sexual orientation into Title VII." *Simonton*,
> 232 F.3d at 38.

Plaintiff's reliance on *Price Waterhouse* is not justified because, whatever the contours

---

because of "sex").

of the "sexual stereotype" theory outlined therein, that case did not involve a sexual orientation claim.  Thus, the Supreme Court did not have to grapple with Congress' repeated refusals to extend Title VII to sexual orientation claims.  Moreover, the Supreme Court emphasized that the ultimate inquiry was whether Hopkins did not become a partner because she was a woman.

There is no evidence in this record to infer that males are treated differently than females at Wise.  A comparison between Prowel and a woman who exhibited typical feminine traits would not suffice.  The more analytically precise method to establish that Prowel's gender, rather than his sexual orientation, was the cause of the discrimination is to show that a lesbian woman who exhibited unusually masculine behaviors would not have been subject to harassment.  In summary, there is simply no evidence by which a reasonable fact finder could conclude that Prowel suffered the alleged discrimination because he was male.  Accordingly, Defendant is entitled to summary judgment on the sex harassment claim.[3]

    2.       Discrimination "Because of Religion"

Plaintiff's effort to repackage his sexual orientation claim as one arising under a Title VII protected category is even more transparent in the "religion" context.  Indeed, Prowel forthrightly admits "that the only way in which Plaintiff failed to conform to his co-workers' religious beliefs was by virtue of his status as a gay man."  Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ¶ 63.

Title VII prohibits employers from using an individual's religion as a criterion in employment decisions.  Courts have also recognized that Title VII further prohibits employers

---

[3]Because the Court concludes that Plaintiff cannot satisfy the first element of a hostile work environment claim, it will not address the remaining elements of the claim.

from penalizing an individual's failure to embrace the employer's faith.  *Pedreira v. Kentucky Baptist Home for Children, Inc.*, 186 F. Supp.2d 757, 760 (W.D. Ky. 2001).  The record reflects that Prowel is a Christian and that the alleged religious harassment came from other Christians.  Prowel admits that he did not have religious beliefs about homosexuality and that he was not harassed based on his religious beliefs.  Wise did not require Prowel to participate in any religious activity, nor did it fail to accommodate any religiously-based request made by Prowel.  Rather, Prowel argues that due to his status as a gay man, he did not conform to his co-workers' belief that homosexuality is a sin and therefore he is entitled to assert a Title VII claim for discrimination on the basis of "religion."  This is indistinguishable from a "sexual orientation" claim.  For the reasons articulated above, it is barred as contrary to the statutory intent of Congress.[4]  No reasonable factfinder could conclude that Prowel suffered the alleged discrimination because of religion.  Accordingly, Wise is entitled to summary judgment on the religious harassment claim.

      3.      Termination in Retaliation for Protected Activity

Retaliation claims under Title VII are based on a different section of the statute and are analyzed under a different standard.  As recently summarized in *Kress v. Birchwood Landscaping*, 2007 WL 800996 (M.D. Pa. 2007):

> Title VII prohibits an employer from "discriminat[ing] against" an employee because the employee "opposed any practice" prohibited by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" undertaken pursuant to Title VII, 42 U.S.C. 2000e-3(a);

---

[4]The Court need not reach Defendant's alternative argument that the alleged religious discrimination was not severe and pervasive.  Religious expression in the workplace is a complex legal issue involving a balance between the sometimes conflicting rights of co-workers.

To establish a prima facie case of retaliation in violation of Title VII, the plaintiff must prove three elements by a preponderance of the evidence. First, the plaintiff must show that she engaged in an activity protected under the statute. A protected activity is any activity provided for by either the participation clause or the opposition clause of the statutory language. '[I]nformal protests of discriminatory employment practices, including making complaints to management' " constitute opposition.  Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. ... Second, the plaintiff must show that she suffered a materially adverse action. ... Finally, the plaintiff must show that the materially adverse decision was causally related to the protected activity.  ("Many may suffer ... harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief.") The causal relationship identifies the "retaliatory animus."

*Id.* at *17 (citations omitted).  Retaliation claims follow the familiar *McDonnell-Douglas* burden-shifting approach.

Defendant contends that Plaintiff did not engage in protected activity because he was complaining about discrimination based on sexual orientation or made generalized complaints about unfair treatment which cannot form the basis for a retaliation claim.  Defendant further contends that Plaintiff cannot demonstrate a causal connection or that its articulated reason for discharging Prowel was pretextual.  There is no dispute that the termination of Prowel's employment constituted an adverse employment action.

As an initial matter, it is not necessary for a plaintiff to prove the merits of an underlying discrimination complaint in order to invoke the anti-retaliation protection of Title VII.  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).  As Prowel points out, a plaintiff need only have a "good faith, reasonable belief that a violation existed."  *Id.*  Thus, even though the Court has found that Prowel does not have a valid claim under Title VII for sex or religious harassment, he could still prevail on his retaliation claim.

As another preliminary matter, the Court concludes that Prowel did engage in a sufficient

form of activity.  In *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995), the Court explained that "acceptable forms of protected activity under Title VII's analogous opposition clause include formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.  (citation omitted).  The Court looks to the message conveyed, rather than the medium of conveyance.  *Id.*

Turning now to the most difficult issue, the Court acknowledges that whether Prowel "engaged in an activity protected under the statute" is a close call.  There are two facets to this inquiry: (1) whether Prowel had a good faith belief that the conduct was protected; and (2) whether that belief was objectively reasonable.

A.      Good Faith

Plaintiff contends that he had a good belief that the alleged discrimination was on the basis of sex or religion because courts around the country had found similar conduct to be actionable.  In *Bianchi v. City of Philadelphia*, 183 F. Supp.2d 726, 738-42 (E.D. Pa. 2002), the Court granted summary judgment on a sexual orientation claim but denied summary judgment on a retaliation claim.  The *Bianchi* Court concluded that the plaintiff had demonstrated a reasonable inference of good faith sufficient to survive summary judgment, in that he knew the conduct was not right, that it constituted harassment, and that it was sexual in nature.  *Id.* at 739.   The Court further explained that the "definitive statement" in *Bibby* of Third Circuit law concerning sexual orientation discrimination under Title VII was issued after the events in question.  Thus, Bianchi's lack of knowledge concerning the precise parameters of Title VII did not remove his claim from the realm of good faith.  *Id.*  The case relied upon by Defendant, *Slagle v. County of*

11

*Clarion*, 435 F.3d 262 (3d Cir. 2006) (involving a retaliation claim for "whisteblowing"), is

inapposite because it held that the participation clause of Title VII does not protect an employee

who files a claim not based on one of the categories enumerated in the statute.  Prowel's claims

are grounded on sex and religion, which are actionable under Title VII.  Accordingly, the Court,

construing this record in the light most favorable to the non-moving party, must accept Prowel's

averment as to his subjective good faith at this stage of the case.

        B.      Objective Reasonableness

      In order for an employee's conduct to constitute a protected activity, "the employee must

hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful

under Title VII." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d

130, 135-36 (3d Cir. 2006); *see also Fogleman v. Greater Hazleton Health Alliance*, 122 Fed.

Appx. 581, 583-84 (3d Cir.2004) (unpublished) ("It thus is not enough for a plaintiff to allege

that his belief in this regard was honest and bona fide; the allegations and record must also

indicate that the belief, though perhaps mistaken, was objectively reasonable.")  Title VII's anti-

retaliation provisions protect employees who "oppose employment practices made illegal by Title

VII."  *Curay-Cramer*, 450 F.3d at 134.  Opposition to an illegal employment practice must

identify the employer and the practice, at least by context.  *Id.* at 135.  There is no "hard and fast

rule"; instead, the facts must be evaluated in light of the statutory language and legislative intent.

*Id.*

      In *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003), the

Seventh Circuit explained: "Title VII prohibits an employer from discriminating against an

employee 'because he has opposed any practice made an unlawful employment practice by' Title

VII. 42 U.S.C. § 2000e-3(a).  In other words, Title VII protects an employee from 'retaliation for

complaining about the types of discrimination it prohibits.'" (citation omitted).  The Court

reasoned that because Hamm had advanced an invalid "sexual orientation" complaint, he could

not establish retaliation for complaining about an employment practice that violated Title VII.  In

*Barber*, the Court concluded that a letter asserting generalized complaints of mistreatment did

not constitute the type of "protected conduct" necessary to support a retaliation claim.  In

*Fogleman*, the Court concluded that even though Plaintiff complained about sexual harassment

and a hostile work environment, her complaints were not objectively reasonable in context, and

therefore she had not engaged in "protected activity."  122 Fed. Appx. at 583-84.  In *Wallace v.

New York State Dept. of Correctional Servs.*, 2006 WL 2134644 *9 (W.D.N.Y. 2006) (citations

omitted), the Court reasoned:

> In the instant case, the civilian employee complained of harassment on the basis
> of sexual preference. However, Title VII does not prohibit harassment or
> discrimination because of sexual orientation. Since the civilian employee's
> complaint was not encompassed by Title VII, plaintiff's participation in an
> investigation of that complaint cannot constitute retaliation pursuant to Title VII.
> Accordingly, plaintiff has failed to establish that he engaged in protected activity
> as required to demonstrate a prima facie case of retaliation under Title VII.

Even recognizing that there is no hard and fast rule, the Court concludes that Prowel did

not have an objectively reasonable belief that he engaged in protected activity, and therefore his

retaliation claim must fail.  For the reasons set forth above, the harassment in this case was

because of Prowel's sexual orientation, rather than sex or religion.  The statutory language and

congressional intent clearly show that discrimination based on sexual orientation is not

prohibited by Title VII.  Unlike *Bianchi*, the Court's "definitive statement of law" in *Bibby* was

issued in August 2001, long before Prowel's complaints.  Prowel did not oppose an employment

practice that is actionable under Title VII.  Accordingly, the "protected activity" prong cannot be

13

satisfied and Defendant is entitled to summary judgment on the retaliation claim.[5]


Conclusion

As noted above, the conduct which Prowel apparently suffered at the hands of his co-workers was reprehensible.  However, Congress has not seen fit to extend Title VII to cover discrimination on the basis of sexual orientation.  The Court must give effect to this Congressional intent, no matter how artfully such claims are packaged.  For the reasons set forth above,  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 24) is **GRANTED.**

SO ORDERED this 13th day of September, 2007.

BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge

---

[5] The Court need not reach the issues of causal relationship or pretext.

cc:    Timothy P. O'Brien, Esquire
       Email: tpob@icubed.com
       Katie R. Eyer
       Center for Lesbian and Gay Civil Rights
       Email: keyer@center4civilrights.org

       Kurt A. Miller, Esquire
       Email: kmiller@thorpreed.com